## THE BAKER.

### THE THERESE.

(District Court, S. D. New York. December 27, 1900.)

COLLISION—DELAWARE RIVER—BARGES SHEERING.

Where the evidence in a suit and cross libel for collision between two barges laden with coal, being towed by a tug, tandem, down the Delaware river, showed that it resulted from the sheering of one or both, which caused the one behind to overtake and run into the other, and that the following vessel used due care to avoid the collision, and was also insufficient to establish such fault or negligence on the part of the forward barge as to render her liable, no damages will be allowed, it being impossible to determine with any degree of certainty that the sheering of such vessel, which produced the collision, was not due to the action of the currents and her bad steering qualities, rather than to negligence in her management.

In Admiralty. Libel and cross libel for collision.

Carpenter & Park and Mr. Symmers, for the Therese.
Wheeler & Cortis, for the Baker.

BROWN, District Judge. The above libel and cross libel were filed to recover damages by the owners of the coal barges Therese and Baker, growing out of a collision between the barges at about half past 1 in the morning of February 16, 1900, while going down the Delaware river in tow of the steam tug Pilot, tandem, each on a hawser of about 60 fathoms. Each was loaded with about 1,400 tons of coal. During a sheer by one or both barges, the Baker, which was the hindmost barge, ran up against the port side of the Therese, striking the latter with her stem and starboard bow a little forward of amidships, breaking some of her planking and carrying away to port a part of the stem of the Baker. No fault was alleged against the tug, which was not a party in either libel. Each barge ascribed the blame to the other.

There is much conflict in the evidence as to the amount of the sheer by the two barges and as to their relative positions at different times. But as each barge was changing her position more or less by sheering, and as the tug also by her hard a-port wheel shortly before collision must have changed her heading materially, conflicting accounts as to the movements and positions of the boats in the nighttime shortly before collision are to be expected, and less dependence than usual can be placed on the testimony in this regard.

It seems remarkable that a barge astern, upon a hawser 360 feet long, should gain upwards of 400 feet upon the barge ahead of her, so as to strike the latter forward of amidships, while the tug was all the time pulling ahead. Although it appears from the testimony that such collisions occasionally happen, I cannot understand how they are physically possible, except when the barge ahead sheers each way much more than the barge behind. Any sheer by either barge in tow tends to diminish the speed of the tug by increasing the resistance to the direct forward movement. If the head barge takes a wide sheer to either side, she necessarily not only retards the forward motion of the tug, but by her own divergence she proportionally diminishes her own forward movement in the line of her previous course. The boat behind her if sheering less, or none at all, by the effect of her own momentum, which is great when heavily loaded like these barges, will therefore necessarily run up somewhat and gain upon the boat ahead through the latter's double loss in forward movement, and upon the continuance and repetition of this loss by the following sheer of the barge ahead to the other side, as always happens after a strong sheer in one direction, I can understand how the barge behind, if sheering much less, might overtake and strike the one ahead, while the latter on the return sheer is crossing the course of the one behind which keeps more nearly her former course. The danger for the barge ahead is that after taking a wide sheer to one side, she will take a similar sheer to the other side, and in doing so lose so much in her proper course forward as to run upon the bows of the barge behind. When such a result is likely to happen, all that the barge behind can do to avert it, is to turn her bows in the direction of the sheer of the boat ahead, as in this case the wheelsman testified he did. But where the hind barge sheers most, I do not see how she can possibly overtake another boat 40 fathoms ahead.

I have no doubt that in this case the collision happened in the way above indicated; that the Therese first took a wide sheer to starboard, i. e. to the westward, followed by a strong sheer to port, and that during the latter sheer she was struck by the Baker, because the Therese had in these two sheers retarded the tug and lost space enough to bring the Baker against her. All agree that the Therese made these two sheers, though the amount and cause of her sheers to the westward are in dispute. The Therese says it was caused by the Baker's first sheer to the eastward, which the latter denies.

The libel charges the Baker with fault also in not having starboarded her helm so as to keep her bows off to the eastward when the Therese sheered to the eastward, and with having on the other hand, ported her helm, so as to run nearly squarely into the Therese. But the angle of collision, as I am satisfied from the effects of the blow, must have been considerably less than a right angle. The side of the Therese was jammed in as by a glancing blow, and her crossbeam was carried upward and somewhat forward, while the stem of the Baker showed plainly that the Therese was crossing from starboard to port. The wheelsman on the Baker, although a young man, was a very unusually intelligent person; his deportment as a witness was of the best; and he was in the best position of any of the witnesses to observe correctly the movements and relative positions at all times both of the Therese and of the tug. He had the two staff lights of the tug always in view, and they were an all-sufficient guide to his general course; since any material sheer by his own barge would be immediately apparent by the changed bearing of the staff lights off the port or the starboard bow. His evidence shows that he was attentive both to the barge ahead and to the tug; that the Therese first sheered widely to starboard so that he could not steer after her and the tug both; that his own barge did not sheer greatly, nor cause the sheer of the Therese. I give superior credit to his testimony for the reasons above stated, and because his account furnishes a reasonable explanation of the collision, which the testimony for the Therese not only does not do, but on the contrary, so far as I can understand, would make collision impossible, because the Baker if sheering most could not have overtaken the Therese. I have no doubt that on the Therese's eastward sheer the Baker starboarded and thus did all she could to avoid collision, and that consequently the Baker was not in fault.

The mate of the tug, indeed, testifies that the Therese upon turning back to port, did not pass to the eastward of the line of his tug. But it appears that the tug had been for some time previous under a hard a-port wheel; the helm as the mate says was put in the becket hard a-port to break the Therese's westward sheer to starboard, and remained in the becket until collision. That necessarily changed the heading of the tug to starboard by throwing her stem to the westward, so that the Therese, 200 feet astern, might sheer much to the eastward of the former course and still not be to the eastward of the line of the tug's changed heading. The mate's statement that the helm in the port becket did not change his heading is either a mistake,

or discredits his testimony. The Baker, as I have said, was in the best position to observe the true relative position of the Therese, and I do not doubt De Goff's testimony that the Therese after a strong sheer to the westward gave a nearly equal one to the eastward.

There is some evidence tending to show also that the Therese was accustomed to steer badly; but I do not give much consideration to this evidence. If true, it tends to absolve the Therese from blame, by removing any presumption of negligence that might arise from the mere fact of a wide sheer unexplained. To sustain an action like this, fault or negligence must be proved. In the changes and diverse currents of river navigation more or less sheering is unavoidable; and considering the different degrees of steering quality in different barges, it is impossible for me to adjudge with any approach to correctness how much of change is to be ascribed to natural causes not preventable, and how much, if any, to negligence; so that in the absence of proof of some specific acts of negligence or misconduct causing the sheer, or of circumstances clearly indicating it, the charges should be deemed not sufficiently proved. Such I think is the case against the Therese, as well as the Baker; both libels should, therefore, be dismissed.